IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| JAMES BERNARD, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No.  2:13-cv-02718-JTF-CGC** |
| **v.** | ) | |
| | ) | **PLAINTIFF DEMANDS JURY** |
| RAILSERVE INC., | ) | |
| | ) | |
| **Defendant.** | ) | |

MEMORANDUM IN SUPPORT OF MOTION FOR
JUDGMENT ON THE PLEADINGS

COMES NOW Railserve, Inc. ("Railserve") and files this Memorandum of Law in Support of Railserve's Motion for Judgment on the Pleadings.

## I.  STATEMENT OF THE CASE

James Bernard ("Bernard") has filed a common law retaliation claim against his former employer, Railserve. (Complaint, ¶8).  He has also filed a bankruptcy action.  In his bankruptcy action, he has repeatedly failed to disclose the existence of this action and various other claims he has against Railserve.  Therefore, under the doctrine of judicial estoppel, this lawsuit should be dismissed.

Alternatively, Bernard's claim fails for various other reasons.  Plaintiff cannot pursue a common law claim where, if enacted prior to 1984, there exists a statute which protects the claimed protected conduct (here whistleblowing about safety concerns) and provides a remedy for retaliation.  There are at least three statutes, all of which were enacted prior to 1984, that protect Bernard's supposed whistleblowing and which provide a remedy for retaliation.  Indeed, as discussed below, Plaintiff is seeking relief under one of these statutes - the National Labor

Relations Act ("NLRA").  Alternatively, Bernard's claim is preempted by the NLRA.  Finally, any internal safety complaints by Bernard do not support a common law whistleblowing retaliation claim.

## II.  STANDARD OF REVIEW

Because Defendants have filed an Answer to Plaintiff's Complaint, this Motion must be styled as a "Motion for Judgment on the Pleadings", pursuant to F.R.C.P. 12(c).  Catron v. Dr. James S. Hayes Living Home Health Care Agency, Inc., 2013 WL 1729124 at *1 (W.D. Tenn. April 22, 2013).  However, the standards for granting a Rule 12(c) motion mirror the standards for granting a Rule 12(b)(6) motion.  Ackerson v. Bean Dredging LLC, 589 F.3d 196, 209 (5th Cir. 2009); HDC, LLC v. City of Ann Arbor, 675 F.3d 608, 611 (6th Cir. 2012).  Thus, if a particular claim fails to state a legally cognizable claim, dismissal is mandated.  Smith v. St. Bernards Regional Medical Center, 19 F.3d 1254, 1255 (8th Cir. 1994) (dismissing claims against individuals as, under governing law, no liability can attach to individuals).  Ultimately, in ruling upon this Motion, the Court should be guided by Rule 12's purpose, to eliminate claims that are totally flawed in their legal premises and destined to fail.  Neitzke v. Williams, 490 U.S. 319, 326-27 (1989).

Generally, courts only consider the pleadings under Rule 12.  However, a Court may take judicial notice of other judicial proceedings without converting the motion into one for summary judgment.  Buck v. Thomas M. Cooley Law School, 597 F.3d 812, 816 (6th Cir. 2010).  The Court may also consider public records, matters which the Court may take judicial notice and decisions of government agencies attached to the motion.  Nieman v. NLO, Inc., 108 F.3d 1546, 1554 (6th Cir. 1997) (public records); Lovelace v. Software Spectrum, Inc., 78 F.3d 1015, 1018

(5th Cir. 1996) (judicial notice); <u>Pension Benefit Guar. Crop. V. White Consol. Indus., Inc.</u>, 998 F.3d 1192, 1197 (3rd Cir. 1993) (decisions of governmental agencies).

## III. **FACTS**

Plaintiff worked for Railserve. (Complaint, ¶8).  He raised various safety related concerns.  Sometimes he complained externally.  Specifically, he complained to the Federal Railroad Administration ("FRA"). (<u>Id</u>. ¶9).  Sometimes he complained internally.  (<u>Id</u>. ¶¶12, 14).  Bernard was discharged for insubordination in mid-December 2012.  (<u>Id</u>. ¶23).[1]

Following his discharge, Bernard filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").[2]  A true and accurate copy of Bernard's January 4, 2013 EEOC Charge of Discrimination is attached as Exhibit A.  He further filed a charge against Railserve with the National Labor Relations Board ("NLRB").  A true and accurate copy of Bernard's December 26, 2012 NLRB Charge is attached as Exhibit B.  On May 30, 2012, the NLRB issued a complaint on Bernard's behalf.  A true and accurate copy of the NLRB Complaint is attached as Exhibit C.  The NLRB complaint asserted that Bernard had engaged in concerted activity when he raised his safety complaints.  Exhibit C, ¶9(a).  It further alleged that he was discharged for his complaints.  (<u>Id</u>. ¶¶9(b-c)).  The NLRB complaint sought relief on Bernard's behalf. (<u>Id</u>. ¶¶14-16).[3]  On September 27, 2013, Bernard's action was consolidated with another former Railserve employee's claim.  A new complaint issued.  A true and accurate copy of the NLRB Consolidated Complaint is attached as Exhibit D.  Again, in

---

[1] Railserve denies that Bernard was discharged for making safety complaints.  Rather, he was discharged because he refused to answer questions asked by Railserve during its investigation into his complaints, which hindered Railserve in its efforts to investigate and rectify safety concerns.

[2] As stated above, the court may take judicial notice of matters of public record such as other lawsuits, administrative actions, etc.

[3] Traditional NLRB remedies include cease and desist notices, reinstatement and back pay.  29 U.S.C. 160(c).

pertinent part, the NLRB again asserted that Bernard had engaged in protected conduct by raising safety complaints, and that his discharge for doing so violated Section 8(a)(1) of the Act. (Ex. D, ¶¶10, 11(a), 17-19).[4]  Again, the NLRB sought (and is seeking) a remedy for Bernard as a result of this alleged wrongdoing.  Id.[5]

This was not Bernard's only legal activity.  On January 11, 2013, Bernard sued another former employer - - the Illinois Central Railroad Company.  See, Exhibit E (hereinafter the "Illinois Central Complaint").  This Complaint asserted various retaliation claims arising under the Federal Railroad Safety Act ("FRSA"), as well as, other claims.  See, Ex. E, Illinois Central Complaint, ¶12-21.

On May 23, 2013, Bernard filed a Chapter 13 Bankruptcy Petition in the United States Bankruptcy Court for the Western District of Tennessee.  See, Exhibit F, Voluntary Petition for Chapter 13 Bankruptcy, Case No. 13-25473-E, (hereinafter "Bankruptcy Petition").  Item 4 of the Bankruptcy Petition's Statement of Financial Affairs, required Bernard to disclose "all suits and administrative proceedings to which the party is or was a party within **one year** immediately preceding the filing of this bankruptcy case".  Ex. F at 27 (emphasis added and in original).  Bernard did not disclose the existence of his (a) EEOC charge against Railserve (Ex. A), (b) his NLRB charge against Railserve (Ex. B) or (c) his Illinois Central Complaint (Ex. F).

Schedule B of the Bankruptcy Petition, at items 21, required a description of "[o]ther contingent and unliquidated claims of every nature . . .".  Ex. F at 10.  Plaintiff, under penalty of perjury, marked an "x" under "none".  Ex. F, item 35 and at p. 25.  Based upon the filings on

---

[4] The NLRB Complaint also alleges he was discharged for union activities in violation of Section 8(A)(3).  But, as described above, there is an independent Section (a)(1) claim based on the safety complaints.

[5] A hearing is currently scheduled for January 6, 2014 in Memphis, Tennessee.

May 30, 2013, the Bankruptcy Court ordered plaintiff's employer to deduct weekly wages from his paychecks and to forward them to the trustee.  Exhibit G.

On August 15, 2013, Plaintiff filed a common law retaliatory discharge claim against Railserve in the General Sessions Court of Tennessee for the Thirtieth Judicial District at Memphis, Tennessee.  That case was removed and became the present action.  On August 23, 2013, Plaintiff returned to his Bankruptcy Petition.  He filed an amended Schedule I Statement of Income.  Exhibit H.  However, he still failed to disclose the (a) EEOC charge (Ex. A); (b) the NLRB claim (which has now turned into a Complaint, Ex. C); (c) the Illinois Central Complaint (Ex. E) or (d) his Tennessee State Court action in which he was seeking almost $12 million dollars in damages.  (Complaint, ¶34).  On September 5, 2013, the Bankruptcy Court entered an Order confirming Plaintiff's Chapter 13 Bankruptcy Plan. Exhibit I.

On November 1, 2013, the defendant moved to dismiss Bernard's Illinois Central Complaint (Ex. E).  The basis of the Motion (Exhibit J) was that under the doctrine of judicial estoppel, Bernard's claim should be dismissed.  Bernard amended his Bankruptcy Petition on November 20, 2013.  He listed his Illinois Central claim.  (Exhibit K, pp. 2 and 6).  He still failed to disclose his (a) EEOC charge against Railserve, (b) the NLRB Complaint (now consolidated with another ex-employee's) or the (c) present action in which he seeks almost $12 million dollars in damages.

## IV.  ARGUMENT

### A.  BERNARD'S COMPLAINT SHOULD BE DISMISSED ON THE BASIS OF JUDICIAL ESTOPPEL

The Bankruptcy Code requires a debtor to file "a schedule of assets and liabilities . . . .".  See, 11 U.S.C. §521(a) (emphasis added).  "The disclosure obligation of consumer debtors are the very core of bankruptcy process . . ." Lewis v. Weyerhauser Co., 141 Fed. Appx. 420, 424

(6th Cir. 2005) (emphasis added).  It is axiomatic, that a "cause of action is an asset that must be scheduled under §521(1)".  Lewis, supra, 141 Fed. Appx. at 424.  See, Clarke v. UPS, 421 B.R. 436, 439 (W.D. Tenn. 2010).  The disclosure obligation is a continuing one and all causes of action must be disclosed.  Clarke, supra, 421 B.R. at 440.

Bernard has wholly failed to comply with his obligation as a debtor.  In his initial Bankruptcy Petition, he failed to disclose his: (a) EEOC charge; (b) his Board charge; and (c) his Illinois Central Complaint.  Even after the Illinois Central brought it to his attention that causes of action need to be disclosed, he failed to fully comply with his obligations as a debtor.  He filed an amended petition that disclosed the Illinois Central Complaint (Ex. K, pages 2 and 6), but not his (a) EEOC charge (Ex. A); (b) the NLRB Complaint against Railserve (Ex. D); or this lawsuit which he seeks almost $12 million dollars in damages.  (Complaint, ¶34).

Courts have developed a doctrine to deal with debtors who refuse to play by the rules: the doctrine of judicial estoppel.  Under this doctrine, the debtor (here Bernard) is barred from pursuing undisclosed claims.  Lewis, 141 F. Appx. at 425.  The doctrine "protects the integrity of the judicial process by preventing a party from taking a position inconsistent with one successfully and unequivocally asserted by the same party in a prior proceeding".  Reynolds v. C.I.R., 861 F.2d 469, 472 (6th Cir. 1988).

The elements of judicial estoppel are twofold.  First, the party against whom it is invoked must have asserted under oath in a prior proceeding, a position different from the one currently being pursued.  Second, the prior court must have adopted the contrary position either as a preliminary matter or as a part of a final disposition.  Teledyne Indus., Inc. v. NLRB, 911 F.2d 1214, 1218 (6th Cir. 1990); White v. Wyndham Vacation Ownership, Inc., 617 F.3d 472, 476 (6th Cir. 2010).  Clearly, both elements are met here.

- 6 -

First, Bernard has failed to disclose on two separate occasions the existence of any <u>claims</u> against Railserve.  Thus, Bernard (under penalty of perjury) has twice taken the position he has <u>no</u> claims against Railserve.  That is the polar opposite of the position asserted in this case (and in the NLRB action).  That satisfies the first element.  <u>Johnson v. Interstate Brands Corp.</u>, 2008 WL 152895 at *4 (W.D. Tenn. Jan. 14, 2008) ("A motive to conceal can be inferred from the omission itself, because [b]y omitting the claims, [the debtor] could keep any proceeds for [him]self. . .").  Obviously, after Illinois Central put him on notice as to his disclosure obligations, Bernard's continued failure to disclose this suit speaks volumes as to his intent.  In addition, the Bankruptcy Court's Order (Ex. I) of September 4, 2013, confirming his Bankruptcy Plan, satisfies the second element.  See, <u>Carpella v. CSX Transportation, Inc.</u>, 2009 WL 2950248 at *2 (N.D. Ohio Sept. 14, 2009) <u>citing</u> <u>Reynolds v. Commissioner of Internal Revenue</u>, 861 F.2d 469, 473 (6th Cir. 1988).

Admittedly, courts in the 6th Circuit have considered whether the failure to disclose resulted from mistakes or inadvertence.  <u>White</u>, 617 F.3d at 478.  Relevant to the inquiry is (1) whether the debtor has no motive for concealment and (2) whether the debtor lacks knowledge of the factual basis of the undisclosed claims.  <u>Browning v. Levy</u>, 283 F.3d 761, 776 (6th Cir. 2002).  Relevant to motive is the principle "that it is always in a Chapter 13 petitioner's interest to minimize income and assets".  <u>Lewis</u>, 141 Fed. Appx. at 426.  As to knowledge - when Plaintiff filed his initial paperwork with the Bankruptcy Court (Ex. F) he knew he had claims against Railserve - he had filed EEOC and NLRB charges (Exs. A and B).  Certainly, by his November 20, 2013 filing (Ex. K), Bernard knew of his obligation to disclose <u>all</u> causes of action and that he was pursuing this action <u>and</u> the NLRB Complaint (Ex. D).

He was also under a continuing duty to disclose his claims.  <u>Clarke</u>, <u>supra</u> 421 B.R. at 440.  He did <u>not</u>, however, amend his Bankruptcy Petition when he filed his Illinois Central Complaint. (Ex. F).  In August 2013, he filed additional paperwork (Ex. H) with the Bankruptcy Court; he did not disclose: (a) his Illinois Central Complaint; <u>or</u> (b) disclose that his NLRB Charge (Ex. B) had blossomed into a NLRB Complaint (Ex. C); <u>or</u> (c) the existence of this suit. Any possibility that Bernard is acting in anything other than bad faith is utterly destroyed by what occurred in November 2013.  Illinois Central moved to have his Illinois Central Complaint dismissed under the doctrine of judicial estoppel.  (Ex. E).  Thereafter, Bernard finally disclosed his claims against the Illinois Central to the Bankruptcy Court.  <u>But he still failed to disclose his claims against Railserve</u>.  (Ex. K at pages 2 and 6).

This Court has repeatedly dismissed undisclosed lawsuits by bankruptcy petitioners under circumstances far less egregious than this.  See, <u>Curry v. Rother Int'l, L.P.</u>, 2013 WL 3874702 (W.D. Tenn. July 25, 2013); <u>Hamlin v. Baptist Mem'l. Hosp.</u>, 2011 WL 9022351 (W.D. Tenn. Jan 27, 2011); <u>supra</u>, <u>Catron</u>, 2013 WL 1729124.  Failure to dismiss under the circumstances presented herein "would only diminish the necessary incentive to provide the Bankruptcy Court with a truthful disclosure of the debtor's assets".  <u>Curry</u>, 2013 WL 3874702 at *5.

## B.  BERNARD'S CLAIMS FAIL BECAUSE HE HAS STATUTORY <u>REMEDIES THAT PRE-DATE 1984</u>

Bernard alleges he is an at-will employee.  Complaint, ¶8.  As such, Railserve could discharge him for good cause, bad cause, no cause at all, without being guilty of a legal wrong. <u>Guy v. Mutual of Omaha Co.</u>, 79 S.W. 3d 528, 534-35 (Tenn. 2002).  Tennessee courts first recognized a limited public policy exception to the at-will doctrine in 1984.  <u>Clanton v. Cain-Sloan Co.</u>, 677 S.W.2d 441 (Tenn. 1984).  The public policy relied upon cannot be determined from the common law or established by the courts.  <u>Stein v. Davidson Hotel Co.</u>, 945 S.W.2d

714, 717 (Tenn. 1997).    The public policy must be found in a constitution, statutes or regulations.[6]

Significantly, if a statute enacted before 1984 exists which gives a remedy for a discharge based upon the allegedly protected conduct, no common law public policy claim will sound. Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 899 (1992).  Upon this principal, Bernard's claim fails.  Tennessee courts and courts applying Tennessee law, have concluded that the Tennessee Occupational Safety and Health Act precludes a common law claim for reporting safety violations, as the statute created a right and remedy for reporting violations in 1974.  Boyd v. Edwards & Assoc. Inc., 309 S.W.3d 470, 472-73 (Tenn. App. 2009) citing Ellis v. Rexnard, 2007 WL 2509689 (E.D. Tenn. August 30, 2007).    See also, McGhee v. Adesa Auctions Memphis, 2009 WL 649828 at *7 (W.D. Tenn. March 12, 2009).  In his Complaint, Bernard alleges that he complained to the FRA (Complaint, ¶9).  The Federal Rail Safety Act ("FRSA") (and various predecessors) has prohibited retaliation against reporting railroad related safety complaints since at least 1980.  See, Larson, Unjust Dismissal, Volume 3, Section 11.03 [17], fn.1 (Matthew Bender 2013); Rayner v. Smith and CSX Corporation, 873 F.2d 60, 63 (4th Cir. 1989).[7]  Indeed, Bernard initially pursued an FRSA claim against the Illinois Central.  (Exhibit E, ¶¶12-21).

---

[6] Bernard's Complaint does not identify the source of his public policy claim.  Presumably, he is relying upon one of the three statutes discussed below.  To the extent he disclaims reliance on these statutes, he has no public policy.  To the extent he relies upon them, because he has a pre-1984 statutory remedy, no common law public policy claim exits.

[7] Rayner was a preemption case.  Defendant is not arguing preemption here.  The case is cited for the proposition that since 1980 there has been a federal statute that provides both a right to be free of retaliation for reporting safety violations and a remedy.  Thus, under Tennessee law, no common law retaliation claim exists.  The claim is not preempted.  It simply does not exist.

Similarly, the NLRA was enacted in <u>1935</u>.  The NLRA gives employees the right to engage in protected concerted activity.  A form of protected concerted activity is raising safety complaints.  Since at least 1979, the National Labor Relations Board has recognized that safety complaints to a governmental agency (as alleged by Bernard) are protected concerted activity. <u>Talsol Corp.</u>, 317 NLRB 290, 316-17 (1995).  See also P&L Cedar Products, 224 NLRB 244 (1976).  And, indeed, the Board has issued a Complaint (based on a charge filed by Bernard) alleging that Railserve unlawfully discharged Bernard for raising safety concerns.  (Ex. D, ¶¶10, 11(a), 14, 17-19).  The NLRA provides relief such as back pay and reinstatement.  29 U.S.C. 160(c).  Since this claim arises under a statute that existed prior to 1984 - no common law retaliatory discharge claim exists.

## C.  <u>BERNARD'S CLAIM IS PREEMPTED BY THE NLRA</u>

Section 7 of the NLRA protects concerted protected activity.  An employee who raises safety concerns with his employer is engaged in protected concerted activity.  An employer who discharges an employee for raising safety concerns, violates Section 8(a)(1) of the NLRA. <u>Talsol Corp.</u>, 317 NLRB 290, 316-17 (1995).  Indeed, the NLRB (based on Bernard's charge) has issued a Complaint asserting that Bernard reported safety violations and that his subsequent discharge violated the Act.  See, Ex. D, ¶¶10, 11(a) and 14.

For over 60 years, the Supreme Court has held that state claims predicated upon conduct that violates the NLRA are preempted.  <u>Plankinton Packaging Co. v. Wisconsin Rel. Rd.</u>, 338 U.S. 953 (1950); <u>Garner v. Teamster, Local No. 776</u>, 346 U.S. 485, 489-91 (1953).  It does not matter whether the state law in question simply seeks to penalize conduct already prohibited by the NLRA - the state claim is preempted.  <u>Wisconsin Dept. of Indus. V. Gould, Inc.</u>, 475 U.S. 282 (1986).  In sum, "when an activity is arguably subject to Section 7 or 8 of the [NLRA] the

States, as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted". San Diego Bld. Trades Council v. Garmon, 359 U.S. 236, 245 (1950). See also, Lewis v. Whirlpool Corp., 630 F.3d 484, 489 (6th Cir. 2011). As such, Bernard's claim is preempted.

### D. BERNARD'S INTERNAL COMPLAINTS DO NOT SUPPORT A CLAIM FOR COMMON LAW RETALIATORY DISCHARGE

Bernard alleges that he made safety complaints to his immediate supervisor (Complaint ¶12). He also alleges he complained to Railserve management. (Complaint, ¶14). In Paragraphs 19-25 of his Complaint, Plaintiff asserts that his complaints to his supervisor and upper management support a claim for retaliatory discharge. This is wrong. In essence, plaintiff is alleging that he reported the wrongdoing to the wrongdoer - Railserve (and its agents). This does not give rise to a retaliatory discharge claim. Lawson v. Adams, 338 S.W.3d 486, 497 (Tenn. App. 2011).[8]

### V. CONCLUSION

WHEREFORE, for all the foregoing reasons, this Complaint should be dismissed. Bernard should not be allowed to repeatedly fail to disclose this claim (and others) to the Bankruptcy Court. The doctrine of judicial estoppel was designed to deal with this type of abusive behavior. Alternatively, the existence of pre-1984 statutory remedies precludes his proceeding on a common law retaliatory discharge theory. In addition, his claim is preempted by the NLRA. Finally, no matter what, his reports of safety concerns to his supervisor and upper management fail to support a common law retaliation claim.

---

[8] Defendant is not contending in this Motion that a report to the FRA would not support a wrongful discharge claim. The report to the FRA fails for other reasons discussed in this brief. See Parts A - C above. However, the internal reports to the alleged wrongdoers (Railserve and its agents) fails to support a claim. Bernard does not claim he was discharged for refusing to violate safety rules.

Respectfully submitted,

_____/s/ Timothy J. Sarsfield_____
Timothy J. Sarsfield
MO Bar No. 36223 (*admitted pro hac vice*)
Joyce M. Pratt
MO Bar No. 57637 (*admitted pro hac vice*)
Thompson Coburn LLP
One US Bank Plaza
St. Louis, Missouri 63101
Telephone:      (314) 552-6000
Facsimile:      (314) 552-7000
tsarsfield@thompsoncoburn.com
jpratt@thompsoncoburn.com

Michael W. Duffee
IL Bar No. 18237 (*admitted pro hac vice*)
Thompson Coburn LLP
55 East Monroe Street
37th Floor
Chicago, Illinois 60603
Telephone:      (312) 346-7500
Facsimile:      (312) 580-2201
mduffee@thompsoncoburn.com

James M. Simpson (TN Bar No. 015023)
Allen, Summers, Simpson, Lillie & Gresham, PLLC
80 Monroe Avenue, Suite 650
Memphis, Tennessee 38103
Telephone:      (901) 763-4200
Facsimile:      (901) 684-1768
jsimps @allensummers.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this 10th day of December, 2013 electronically filed the foregoing **MEMORANDUM IN SUPPORT OF DEFENDANT RAILSERVE INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS** with the Clerk of the Court using the ECF system which sent notification of such filing to the attorney of record:

Henry E. Reaves III, Esq. BPR# 28348
119 South Main, Suite 500
Memphis, TN 38103
(901) 322-8015
(901) 328-1352 (*facsimile*)
Henry.reaves@beyourvoice.com

*Attorney for Plaintiff James Bernard*

_____ /s/ Timothy J. Sarsfield _____